# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF MISSISSIPPI
# OXFORD DIVISION

**QUINCY MARTEZ TERRY**　　　　　　　　　　　　　　　　　　　　　　　　　　**MOVANT**

**v.**　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　**No. 2:10CR48-SA-DAS**

**UNITED STATES OF AMERICA**　　　　　　　　　　　　　　　　　　　　　　　**RESPONDENT**

## MEMORANDUM OPINION

This matter comes before the court on the motion [312] of Quincy Martez Terry to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255, along with its various amendments, memoranda, and supplements. As the dispositive issue in the case requires no further briefing, the court will rule upon the motion without a response from the government. For the reasons set forth below, the instant motion to vacate, set aside, or correct sentence will be dismissed as waived.

### Standard for Relief Under 28 U.S.C. § 2255

There are four grounds upon which a federal prisoner may move to vacate, set aside, or correct his sentence: (1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) the court was without jurisdiction to impose the sentence; (3) the sentence exceeds the statutory maximum sentence; or (4) the sentence is "otherwise subject to collateral attack." 28 U.S.C. § 2255; *see United States v. Cates*, 952 F.2d 149, 151 (5th Cir.1992). The scope of relief under § 2255 is consistent with that of the writ of *habeas corpus*. *Cates*, 952 F.2d at 151. Relief under 28 U.S.C. § 2255 is not available to test the legality of matters that should have been raised on appeal. *United States v. Walling*, 982 F.2d 447, 448-449 (10th Cir. 1992). A petitioner is barred from raising constitutional claims for the first time on collateral review unless he demonstrates a cause for failing to raise the issue on direct appeal and actual prejudice resulting from the error. *United States v. Pierce*, 959 F.2d 1297, 1301 (5th Cir. 1992), *cert. denied*, 506 U.S. 1007 (1992); *United States v. Shaid*, 937 F.2d 228, 232 (5th Cir. 1991). The burden of showing "cause," an

"objective factor external to the defense," rests with the petitioner. *McCleskey v. Zant*, 111 S.Ct. 1454, 1470 (1991). No other types of errors may be raised on collateral review unless the petitioner demonstrates that the error could not have been raised on direct appeal, and if condoned, would result in a complete miscarriage of justice. *Pierce*, 959 F.2d at 1301; *Shaid*, 937 F.2d at 232. In addition, if issues "are raised and considered on direct appeal, a defendant is thereafter precluded from urging the same issues in a later collateral attack." *Moore v. United States*, 598 F.2d 439, 441 (5th Cir. 1979). Likewise, a motion brought under § 2255 cannot be used as a substitute for a direct appeal. *See United States v. Addonizio*, 442 U.S. 178 (1979). In general, relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of claims that could not have been raised on direct appeal. *See United States v. Segler*, 37 F.3d 1131, 1133 (5th Cir. 1994). The procedural posture of this case is set forth below.

**The Plea Agreement**

After several fits and starts regarding whether he would cooperate with the government in this case – and the extent of his cooperation – Quincy Martez Terry, under a plea agreement and plea supplement, pled guilty to conspiracy to distribute a controlled substance under 21 U.S.C. § 846. As part of the plea agreement, Terry waived the right to appeal or collaterally attack his conviction or sentence:

> WAIVER OF ALL APPEALS AND COLLATERAL ATTACKS: Defendant hereby expressly waives any and all rights to appeal the conviction and/or sentence imposed in this case, and the manner in which sentence was imposed, on any ground whatsoever, including but not limited to the grounds set forth in 18 U.S.C. § 3742. Defendant also hereby expressly waives all rights to contest or collaterally attack the conviction and/or sentence, and the manner in which sentence was imposed, in any post-conviction proceeding, including but not limited to a motion brought pursuant to 28 U.S.C. § 2255. Defendant waives these rights in exchange for the concessions and recommendations made by the United States in this plea agreement.

Plea Agreement, ECF Doc. 141, ¶ 7. In paragraph 9 of the Plea Agreement, Terry attested:

> ACKNOWLEDGMENTS: Apart from being advised of the applicability of the U.S.

Sentencing Guidelines, and other than as set forth elsewhere in the plea documents, no promise or representation whatsoever has been made to defendant as to what punishment the Court might impose if it accepts the plea of guilty. The Defendant understands that any estimate of the probable sentencing range that he may have received from defense counsel, the government, or anyone else is a prediction, not a promise, and said prediction is not binding on the Court. It is understood that the matter of sentencing is within the sole discretion of the trial court. The Defendant acknowledges and understands that if the Court imposes a sentence greater than what he expects he will not be afforded an opportunity to withdraw his plea. This agreement fully reflects all promises, agreements, and understandings between the defendant and the United States Attorney. *The Defendant's agreement is knowing, free, and voluntary, and not the product of force, threat, or coercion. The Defendant has discussed the terms of the foregoing agreement with his attorney and is satisfied with his attorney's advice. Being aware of all the possible consequences of his plea, the Defendant has decided to enter a plea of guilty, and is doing so because he is, in fact, guilty as affirmed by his signature below.*

Plea Agreement, ¶ 9 (emphasis added).

### The Change of Plea Hearing

At his change of plea hearing, Terry testified repeatedly that he was pleading guilty knowingly, intelligently, and voluntarily, and that no one had made threats or promises to induce him to do so. After establishing Terry's competency to enter a plea of guilty, the court engaged in a colloquy with him, advising him of the rights he would waive by pleading guilty, as well as the consequences. Plea Hearing Transcript, p. 4-8. As part of the colloquy, Terry acknowledged that: (1) he had the right to maintain his plea of not guilty (p. 4), (2) that he had ample opportunity to discuss the consequences of a guilty plea with his attorney (p. 5), (3) that he was satisfied with his attorney's representation (p. 5), (4) that his attorney represented his best interests in the case (p. 7), (5) that he had no questions about his rights in the case (p. 7), (6) that he had discussed his rights with his attorney (p. 7), and (6) that, understanding his rights, he wished to plead guilty (p. 7).

He also testified that he had signed the plea agreement and had discussed it with his attorney. Plea tr., p. 10-11. The Assistant United States Attorney then read the plea agreement into the record,

including the provisions in which Terry waived his right to appeal and seek post-conviction collateral relief. Plea tr., p. 11-15. Terry agreed that he understood all provisions of the plea agreement. Plea tr., p. 15. Nonetheless, to ensure that Terry understood the appeal and post-conviction waivers, the court reviewed that provision in detail on the record:

| | |
|---|---|
| [Court]: | I want to draw your attention to Paragraph 7 on Page 2 of the plea agreement where you acknowledge that you expressly waive any and all rights to appeal this conviction and/or any sentence imposed, including any post-conviction or collateral attack upon the sentence. Do you understand that provision? |
| [Terry]: | Not completely. |
| [Court]: | You may confer with your attorney. |
| | (CONFERRING OFF THE RECORD) |
| [Court]: | Mr. Terry, do you – did you have an opportunity to discuss that provision with your attorney? |
| [Terry]: | Yes, ma'am. |
| [Court]: | Do you now understand the provision? |
| [Terry]: | Yes, ma'am. |
| [Court]: | Do you understand that, in this plea agreement, you have waived you right to appeal both the conviction as well as any sentence that the Court impose? |
| [Terry]: | Yes ma'am. |
| [Court]: | And do you also understand that you've waived your right to collaterally attack the sentence in any manner? |
| [Terry]: | Yes, ma'am. |
| [Court]: | Is that your agreement with the government? |
| [Terry]: | Yes, ma'am. |

Plea tr., p. 15-16.

Counsel then represented to the court that she had reviewed and discussed all the terms of the Plea Agreement and Plea Supplement with Terry, and she was satisfied that he understood the charge and the consequences of pleading guilty. Plea tr., p. 17. Counsel also stated that she was satisfied that Terry was entering his guilty plea freely and voluntarily. *Id.*

Then, again, the court reviewed the provision in which Terry waived his right to appeal or seek post-conviction collateral relief, also pointing out that the government had *not* waived its right to appeal, and could do so if it believed that the sentence was too low. Plea tr., p. 18-19. Terry testified once more that he understood that provision. Plea tr., p. 19.

The government then read into the record the facts it intended to prove should the case go to trial, and those facts, if proven beyond reasonable doubt, would have led to a conviction. Plea tr., p. 19-23. Terry stated three objections to that factual basis. First, he argued that, as he had no contact with three of the alleged co-conspirators, he could not be convicted or sentenced using those three to determine the number of co-conspirators (which could impact his sentence). Plea tr., p. 25-26. Second, he argued that the substance found on top of a folding table at the location of his arrest was not cocaine. Plea tr., p. 29-31. Finally, he argued that, contrary to the government's factual basis, there was no firearm in the room with him when he was arrested. Plea tr., p. 31-32. Even if the factual basis had been modified as Terry suggested, the facts, if proved beyond reasonable doubt, would have resulted in a finding of guilt on the conspiracy charge. Terry then acknowledged that the disputed facts would be determined at the sentencing phase, as would their effect on his sentence. Plea tr., p. 33.

The court then asked Terry if "anyone [had] tried to force you, coerce you, or in any way attempt to threaten you in order for you to enter a plea in this case." *Id.* Terry responded, "No,

ma'am." *Id.* Terry then pled guilty, and the court found that "the plea is not a result of force, threats, or promises." Plea tr., p. 34. The court accepted the plea. *Id.*

### Terry's Motion to Withdraw Guilty Plea

After reviewing the Presentence Investigation Report – and the lengthy sentence he could receive under the United States Sentencing Guidelines – Terry had a change of heart. Despite his repeated representations, both in writing and from the witness stand, that he was guilty – and that his plea was knowingly, voluntarily, and freely given – Terry filed a motion to withdraw his guilty plea. In the motion, Terry noted that he objected to the use of three people as part of the drug conspiracy: Taurus Sanford, Kris Longstreet, and Bobby Smalley. In response to the Presentence Investigation Report, Terry objected to the Probation Service's conclusion that he was the leader of the conspiracy – basing his argument largely on his lack of involvement with Sanford, Longstreet, and Smalley. Based upon these two objections, Terry also challenged the calculation of the drug amount used to determine relevant conduct for sentencing. Terry also alleged that previous counsel had erroneously advised him to cooperate with the government (by agreeing to a search of his home) – and that his second attorney had misled him regarding the propriety of a motion to suppress the fruits of that search. He generally argued that neither of his attorneys had properly advised him regarding waiving his appellate and post-conviction relief rights, the proffer sessions, the propriety of a motion to suppress, the basis of the conspiracy, and the plea agreement. Finally, Terry argued that the government used the information from the Rule 11 proffers to its benefit, but never intended to seek a downward departure under Rule 5K1.1. Thus, Terry argued that the government – in bad faith – never sought a downward departure, even though (in his estimation) he had cooperated and provided substantial assistance in other prosecutions.

The government's response to Terry's motion to withdraw his plea was both well-reasoned and thorough. The government made the following observations and provided documentation for each. First, it was Quincy Terry, himself, who contacted the government to initiate a guilty plea. Second, Terry's executed plea agreement confirms that his plea was knowing and voluntary. Third, both Terry and his attorney testified at the change of plea hearing that his plea was knowing and voluntary. For these reasons, the government argued that Terry's plea was knowingly, voluntary, and intelligently given. Similarly, as set forth above, the government noted that Terry – time and again – had stated under oath that his attorney had discussed the plea agreement with him, including the part regarding waiver of appeal and collateral attack. Thus, the government argued that Terry had benefitted from competent counsel throughout the case.

Terry also asserts that the government negotiated in bad faith when stating that it would seek a downward departure under United States Sentencing Guidelines § 5K1.1 – if Terry provided substantial assistance in criminal cases against other defendants. This claim is without merit. An essential part of the plea agreement, plea supplement, and each of the proffers was *that Terry would respond truthfully and completely*. He did not do so. Terry proffered with the government on March 11, 2010, April 6, 2010, and April 9, 2010, under the First Proffer Agreement. Terry later decided not to cooperate further, thus violating the terms of the First Proffer Agreement. Despite Terry's violations of the First Proffer Agreement, the government agreed to another. Second Proffer Agreement, ¶ 6. As set forth in the Second Proffer Agreement, which Terry executed, he admitted that he "did not respond truthfully and completely to all questions posed to him during the meeting, choosing not to inform the Government of his drug suppliers and recipients of his cocaine in Mississippi." Second Proffer

Agreement, ¶ 4. He also "chose to end his cooperation with the Government and seek release from detention." Second Proffer Agreement, ¶ 5.

Terry largely cooperated with the government after the Second Proffer Agreement; however, by that time, "many of his co-defendants were already cooperating with the Government," which would naturally diminish the value of Terry's information. Government's Response to the Defendant's Motion to Withdraw Guilty Plea, p. 18. At a hearing on Terry's motion to withdraw his guilty plea, the court reviewed the motion and response, heard arguments, and denied the motion based upon the government's reasoning.

### The Sentencing Hearing

At sentencing, Terry withdrew all objections to the Presentence Investigation Report. Sentencing Transcript, p. 9. During his argument, Terry's counsel (the third attorney to represent Terry in the case) stated that Terry now understood the sweeping scope of the conspiracy statute – specifically that he did not have to engage directly with other members of the conspiracy to be held responsible for their actions. Sentencing tr., p. 13. The court then imposed the sentence, including 300 months incarceration – and reminded Terry that he had waived both his right to appeal and to seek post-conviction collateral relief. Sentencing tr., p. 18-19. Terry acknowledged that he understood the sentence imposed. *Id.*

### Terry's Claims under 28 U.S.C. § 2255

In the instant § 2255 motion, Terry makes the following nine claims for relief:

(1) Counsel was ineffective for advising Terry to enter into a plea agreement, including the waiver of the right to appeal and to seek post-conviction collateral relief.

(2) Counsel was ineffective in failing to advise Terry of the consequences of his plea, including the waivers.

(3) Counsel was ineffective in advising Terry to cooperate with the government so that he could benefit from a motion for downward departure for substantial assistance under United States Sentencing Guidelines § 5K1.1.

(4) Counsel failed to file a motion to suppress and misled Terry into thinking that such a motion would be filed.

(5) Counsel failed to move for a withdrawal of Terry's guilty plea in a timely fashion.

(6) Counsel failed to argue for the application of the Fair Sentencing Act of 2010, which Terry believes would have led to a lesser sentence.

(7) Counsel failed to argue that Terry should not have been held responsible, by way of relevant conduct, for the acts of three of the conspirators with whom he had no contact.

(8) Counsel failed to object to the aggravating role adjustment under § 3B1.1 of the United States Sentencing Guidelines; as such, Terry was ineligible for Safety Valve relief.

(9) Counsel failed to prevent some of Terry's property from being forfeited.

### Terry's Waiver of His Right to Appeal and Seek Post-Conviction Collateral Relief

As set forth above, as part of the plea agreement, Quincy Terry waived his right to seek relief through a direct appeal or through post-conviction collateral relief, including relief under 28 U.S.C. § 2255. Thus, before the court may consider the merits of Terry's § 2255 claims, it must consider whether the waiver applies in this case. In general, "an informed and voluntary waiver of post-conviction relief is effective to bar such relief." *United States v. Wilkes*, 20 F.3d 651, 653 (5th Cir. 1994). However, "[s]uch a waiver may not always apply to a collateral attack based upon ineffective assistance of counsel." *Id.* The *Wilkes* case is legally indistinguishable from the present one.

> In January 1992, Wilkes pled guilty to a superseding information for possession of "crack" cocaine with intent to distribute. At the hearing, he was represented by an attorney, acknowledged the plea agreement, and waived indictment. He was sentenced to a term of 121 months' imprisonment, a five-year term of supervised release, and a mandatory $50 special assessment. He also waived his right to appeal his sentence on direct appeal and agreed "not to contest his sentence or the manner in which it was determined in any post-conviction proceeding, including, but not limited to, a

> proceeding under 28 U.S.C. § 2255." The district court granted a motion permitting Wilkes to appeal, but this court dismissed the appeal for lack of jurisdiction.
>
> In October 1992, Wilkes filed a motion to vacate, correct, or set aside his sentence pursuant to § 2255. He contended (1) that his trial attorney rendered ineffective assistance of counsel by failing to file an appeal or advise him of time limitations for filing such appeal; (2) that his waiver of appeal was not knowingly, voluntarily, and intelligently made; and (3) that the federal sentencing guidelines are unconstitutionally vague.

*Wilkes*, 20 F.3d at 652. The district court denied the § 2255 motion, and the Fifth Circuit affirmed. The lynchpin of the Fifth Circuit's holding was that Wilkes, through his testimony and representations to the court, undercut his assertion that his plea was not knowingly, voluntarily, and intelligently given:

> [T]he district court found that Wilkes fully understood the waiver of his right to bring an appeal and waived post-conviction motions at the time the plea was accepted. Wilkes attested that he fully understood and voluntarily approved of his plea.

*Id.* at 653. "Solemn declarations in open court carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 73-74, 97 S.Ct. 1621, 1629, 52 L.Ed.2d 136 (1977). The Fifth Circuit noted that Wilkes had "provided no evidence that he did not understand the consequences of his actions;" thus, his "attorney cannot be considered deficient for failing to raise claims knowingly and voluntarily waived in the process of plea bargaining." *Id.*

The present case is legally identical to *Wilkes*. Terry attested under oath, time and again, through written documents and testimony, that he was entering his plea knowingly, voluntarily, and intelligently. The court itself took great pains on multiple occasions – on the record – to ensure that Terry, understood the terms, conditions, and consequences of pleading guilty. In addition, even if Terry's first counsel had given erroneous advice about the nature of a guilty plea, his second attorney averred to the court that she had advised Terry of the consequences of pleading guilty. Further, even if Terry's second counsel (who represented him at the change of plea hearing) had provided erroneous

advice regarding the consequences of pleading guilty, the court, itself, reviewed those consequences in detail during the plea colloquy. Indeed, the court singled out the provision regarding waiver of appellate and post-conviction rights during the change of plea hearing and gave counsel the opportunity to review that provision with him. After consulting with his attorney in court, Terry testified that he understood the provision, and the court explained the provision yet again.

It was only after a review of the lengthy range of incarceration he faced under the United States Sentencing Guidelines – as set forth in the Presentence Investigation Report – that Terry got cold feet. He interposed several objections to the Presentence Investigation Report and moved to withdraw his plea. The court rejected Terry's request to withdraw his plea after reviewing briefing and hearing arguments on the matter. The court later conducted a sentencing hearing. Through his third attorney, Terry withdrew all objections to the Presentence Investigation Report, acknowledging that he now better understood the breadth and scope of the conspiracy statute. After hearing from the parties, the court imposed a sentence that included 300 months incarceration. The court also reiterated that Terry had waived his right to direct appeal, as well as his right to seek post-conviction collateral relief. Terry testified that he understood his sentence.

Terry also alleges that the government negotiated in bad faith regarding a motion for downward departure under United States Sentencing Guidelines 5K1.1 or a motion to reduce sentence under Fed. R. Crim. P. 35. This allegation is without merit. As an initial matter, Terry failed to object to the government's decision not to seek a downward departure under § 5K1.1 prior to sentencing; as such, he has waived that issue. In addition, the decision to seek a downward departure of reduction of sentence is in the sole discretion of the United States Attorney. *United States v. Grant*, 493 F.3d 464 (5th Cir. 2007). Though the government is under no obligation to seek a downward departure under

United States Sentencing Guidelines 5K1.1 or a reduction in sentence under Fed. R. Crim. P. 35, no matter how much assistance a criminal defendant has provided, the government may nonetheless set limits on its discretion through a plea agreement. *Id.* at 467. In this case, the government, in the plea supplement, agreed to file a motion under § 5K1.1 or Rule 35, but only if Terry would agree to cooperate – by "giving full and truthful statements to any and all agents assigned to interview [him] as to any and all knowledge [he] may have of other persons involved in any way in the offenses charged and all other criminal offenses, and to give full and truthful testimony about same before any federal grand jury and at any trial to which [he] is subpoenaed." Plea supplement, ¶ 3(a). As detailed above, Terry admitted in the Second Proffer Agreement that he had not done so, and by that time several of his co-defendants were cooperating with the government (rendering Terry's cooperation less substantial). As Terry violated the terms of the Plea Supplement by his failure to give his full cooperation throughout the proceedings, the government was under no obligation to move for a downward departure or sentence reduction based upon substantial assistance.

As set forth above, Quincy Terry made numerous "[s]olemn declarations in open court" that he understood his plea agreement and that his decision to plead guilty was knowing, voluntary, and intelligent. *Blackledge*, 431 U.S. at 73-74. As such, the court gives them a "strong presumption of verity," as required by the Supreme Court. *Id.* Quincy Terry holds a bachelor's degree and was preparing to take the CPA examination before his arrest in this case. He is an extremely intelligent man. Based upon the extensive record in this case, it is clear that Mr. Terry's attorneys explained the contents of the plea agreement to him, as well as the consequences of pleading guilty – as Mr. Terry has stated repeatedly under oath – and that he understood what he was doing when he pled guilty. For these reasons, the provision of Terry's plea agreement in which he waived his right to appellate and

post-conviction collateral review is valid. As such, the instant Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255 will be dismissed as waived.

## Conclusion

In sum, Quincy Terry waived his right to seek post-conviction collateral relief, and the instant motion to vacate, set aside, or correct sentence will be dismissed. A final judgment consistent with this memorandum opinion will issue today.

**SO ORDERED**, this, the 30th day of April, 2015.

>  /s/ Sharion Aycock  
> **U.S. DISTRICT JUDGE**